NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 22-307 |
| v. | |
| ANTHONY HUTCHERSON, | **OPINION & ORDER** |
| Defendant. | |

**CECCHI**, **District Judge.**

Before the Court are defendant Anthony Hutcherson's ("Hutcherson" or "Defendant") motion to suppress evidence (ECF No. 30 ("Def. Br.")) and omnibus motions for pretrial disclosures (ECF Nos. 31, 62). The Government opposed the motions (ECF No. 36, "Gov't Br.") and Defendant replied (ECF No. 40, "Reply"). The Court heard oral argument on this matter. The Court has considered the parties' submissions and hearing presentations. For the reasons expressed below, Defendant's motions are denied.

I.     **BACKGROUND**

This case involves an encounter on September 28, 2021, between Defendant and two officers of the Newark Police Department, Officer Alexis Rivera and Officer Alonso Vinueza, during which the officers arrested Defendant and subsequently discovered that he possessed an unlawful firearm. Defendant contends that the officers unlawfully stopped him, and all evidence obtained as a result of the stop should thus be suppressed.

The events unfolded as follows. At roll call on the morning of September 28, 2021, Officer Rivera and Officer Vinueza were directed to "address all quality of life issues, motor vehicle violations, and the drug trafficking taking place in the public view" in the sixth precinct, which

1

was "experiencing an abundance of service calls in regards to the sales of narcotics." Def. Ex. A at 1.  The officers "planned to pay extra attention to the South Orange Avenue corridor specifically between Stuyvesant Avenue and Sanford Avenue" because "this area is known to both officers and it's notoriously known for the distributing of" various drugs.  *Id.* at 2.  In fact, just a few days earlier, Officer Rivera and Officer Vinueza responded to a call that reported drug dealing on Halsted Street and South Orange Avenue.[1] Def. Ex. C at 1.  The officers thus planned for Officer Rivera to conduct "stationary surveillance" in an unmarked vehicle with binoculars at Halsted Street and South Orange Avenue.  Def. Ex. A at 2.  Officer Vinueza "pose[d] as a take down unit in the surrounding area in case any illegal activities ar[o]se."  *Id*.

During his surveillance, Officer Rivera observed a man, later identified as Hutcherson, on the sidewalk in front of 994 South Orange Avenue.  *Id.*  Officer Rivera watched Hutcherson congregate with unknown individuals alongside the passenger side of a 2005 Black Caravan and "fumble" with items inside the minivan.  *Id.*  Officer Rivera was unable to observe all of Hutcherson's actions because of his position behind the minivan, but noted in his report that "drug offenders use vehicles to hide beside them to make quick narcotic sales."  *Id.*  After more than thirty minutes of surveillance, Officer Rivera observed Hutcherson "sprint towards the intersection of Salem Street and South Orange Avenue" and approach an "unknown female with a hunch back wearing multicolor clothing [and] a neon green head wrap . . . using a walker."  *Id.*  The woman "handed Mr. Hutcherson U.S. currency and in return Mr. Hutcherson reached inside his pocket,

---

[1] In his police report, Officer Rivera reported that on September 23, 2021, "a call came in" describing two men dealing drugs.  Def. Ex. C at 1.  Officer Rivera and Officer Vinueza responded to the call, and although the officers did not observe the reported narcotics activity, they did see a man who fit the caller's description of one of the men.  Def. Ex. A at 2.  The officers did not stop the man on September 23, 2021, but they later reported that Anthony Hutcherson fit the description made by the caller.  *Id.*

retrieved a clear plastic bag, and from [the] same clear plastic bag he made a selection and handed the same lady an unknown item from [the] same bag." *Id.*

Identifying this interaction as a hand-to-hand drug transaction, Officer Rivera contacted Officer Vinueza to meet up and "apprehend Mr. Hutcherson together." *Id.* The officers arrived together at Hutcherson's location, exited their vehicle, and Officer Rivera, followed by Officer Vinueza, approached Hutcherson. Body Camera Footage of Officer Alonso Vinueza, Def. Ex. E at 1:49–2:01. Hutcherson stood on the sidewalk beside two small bicycles and a minivan. Body Camera Footage of Officer Alexis Rivera, Def. Ex. D at 1:51. As the officers approached Hutcherson, Hutcherson grabbed the handlebar of one of the parked bicycles in order to mount it. *Id.* at 1:52–2:01. Officer Rivera told Hutcherson "I just want to let you know everything is being audio and video recorded." *Id.* at 1:55. Hutcherson replied "okay," and continued to maneuver the bicycle in a way that led Officer Rivera to believe he was preparing to "ride away." *Id.* at 1:56; Def. Ex. A at 2. Officer Rivera then said to Hutcherson, "do me a favor, drop the blunt real quick, drop the blunt" and reached for Hutcherson's arm. Def. Ex. D at 1:59; Def. Ex. A at 2. At that point, Hutcherson dropped the bicycle and started to run. Def. Ex. A at 2; Def. Ex. E at 2:09.

Mere seconds later, the officers grabbed Hutcherson to secure and arrest him, and a struggle ensued. Def. Ex. A at 2; Def. Ex. D at 2:16–2:40. During the struggle, Officer Vinueza shouted "He's got a gun! He's got a gun! Gun! Gun! Gun!" Def. Ex. D at 2:39–2:56. Hutcherson "pulled out a gun from a body brace he had strapped around his waist and [slid] it on the ground under a car towards the sidewalk." Def. Ex. A at 2. Officer Vinueza secured the weapon, and the officers eventually managed to get Hutcherson into a patrol vehicle with the help of backup. *Id.* at 2–3. The officers then transported Hutcherson to the hospital because he "appeared to be having a psychiatric crisis." Def. Br. at 4; Def. Ex. E at 6:30–18:30. The officers found four "clear bags

3

of marijuana (59 grams) packaged for street distribution" and twenty-eight dollars on Hutcherson's body.  Def. Ex. A at 3.

On April 22, 2022, Hutcherson was charged in a federal indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  ECF No. 1.  On May 18, 2022, he pled not guilty.  ECF No. 4.  Hutcherson now moves to suppress the evidence obtained during his arrest on September 28, 2021.

## II.    DISCUSSION

### A.  Motion to Suppress

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To prevail on a motion to suppress, a defendant generally bears the burden of proving the challenged search or seizure was unreasonable under the Fourth Amendment.  *United States v. Trusty*, No. 20-543, 2024 WL 1827645, at *5 (D.N.J. Apr. 26, 2024) (citing *United States v. Acosta*, 965 F.2d 1248, 1257 n.5 (3d Cir. 1992)).  Once the defendant has established a basis for his motion, *i.e.*, that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable.  *United States v. Padgett*, No. 21-521, 2023 WL 2424162, at *5 (D.N.J. Mar. 9, 2023) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)).  The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible.  *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

Defendant argues that the evidence seized as a result of his arrest should be suppressed because (1) Officer Rivera and Officer Vinueza stopped him without probable cause or reasonable suspicion; or, in the alternative, (2) even if the officers developed probable cause to arrest

Hutcherson on September 28, the events of that day were tainted by an earlier unlawful stop allegedly conducted by a different officer—Officer Anthony Matthews—and thus all evidence is fruit of the poisonous tree.

### 1.  Lawfulness of the Arrest

Defendant argues that the officers did not have probable cause to arrest Hutcherson, thereby tainting the evidence seized during his arrest.  Defendant contends that Officer Rivera did not actually witness Hutcherson engage in a hand-to-hand drug transaction, and without observing a drug transaction, the officers did not have probable cause to arrest Hutcherson.  Def. Br. at 17. As discussed below, Defendant's position fails for two independent reasons.  First, Defendant points to no relevant evidence that undermines the validity of Officer Rivera's account.  Instead, Defendant argues that the body camera footage contains no "reference to the alleged transaction in the 30 minutes after the arrest," and that this absence indicates the transaction never occurred. *Id.* at 17.  Defendant also unsuccessfully contends that other tangential evidence challenges Officer Rivera's credibility.  Def. Br. at 9–10.  Second, even without the hand-to-hand drug transaction, the officers had reasonable suspicion to make a *Terry* stop, which then ripened to probable cause as Hutcherson continuously resisted the stop and the officers discovered a firearm.  The Court addresses each point in turn.

### a.  No Evidence Contradicts Officer Rivera's Police Report

Although Defendant contends that Officer Rivera fabricated the hand-to-hand drug transaction in his police report, the evidence Defendant offers does not contradict or otherwise undermine the veracity of Officer Rivera's report.  Defendant makes three arguments in support of his assertion:  (1) the body camera footage contains no "reference to the alleged transaction in the 30 minutes after the arrest," and this absence indicates the transaction never occurred; (2) certain statements made by the officers show that Officer Rivera was not paying close enough

attention to have witnessed a hand-to-hand drug transaction; and (3) other tangential evidence challenges Officer Rivera's credibility generally.

First, Defendant argues that the absence of any reference to the hand-to-hand drug transaction in the body camera footage means that the drug transaction never occurred. This argument is misleading and unpersuasive. As an initial matter, the officers mention Hutcherson's drug selling activity at least four times in the aftermath of the arrest. After arresting Hutcherson, Officer Vinueza directed other officers to search his minivan, stating "hey Juan, there's drugs in the car." Def Ex. E at 12:37–40. On the way to the hospital, Hutcherson asked the officers why they stopped him, and Officer Vinueza responded "you're selling drugs out there, big dog. You're selling drugs." *Id.* at 18:00–18:07. When they arrived at the hospital, Hutcherson asked again why he was stopped, and Officer Vinueza responded, "because you selling out there, you selling out there. You selling drugs." *Id.* at 22:30–40. A few minutes later, Officer Vinueza told hospital staff that Hutcherson was brought in for "possession of a gun and narcotics-related offenses" and for "selling drugs." *Id.* at 24:40–54.

Still, Defendant argues that the absence of a *specific* discussion about the hand-to-hand drug transaction with the unidentified woman is proof that Officer Rivera did not witness it. Def. Br. at 17. Defendant thus asks the Court to speculate as to why the officers did not discuss the details of the transaction during the aftermath of the arrest, and to infer from that silence that the transaction never occurred. The Court will not draw such an attenuated inference, particularly where Defendant offers no additional evidence that could, even considered in the aggregate, contradict Officer Rivera's report. A lack of body camera documentation, alone, does not mean the transaction did not occur. *See United States v. McKinney*, No. 24-03, 2025 WL 2829214, at *5 (D. Del. Oct. 6, 2025) ("[A] lack of video documentation does not mean the event did not occur,

6

and Defendant provides no evidence that it did not."); *Lex v. Berryhill*, No. 17-2204, 2018 WL 4212413, at *12 (M.D. Pa. Sept. 4, 2018) ("[T]he fact that something has not been documented in a specific manner does not mean it has not occurred.").  Defendant's argument is too speculative to be persuasive here.

The second argument is similarly tenuous and requires impermissible speculation. Defendant contends that two statements documented by the body camera footage show that Officer Rivera lacked "knowledge about critical facts he supposedly just observed."  Def. Br. at 9. Defendant's theory appears to be that Officer Rivera's demonstrated "lack of knowledge" shows he was not actually surveilling Hutcherson, or that he was not paying close enough attention to witness a hand-to-hand drug transaction.  But this theory is nothing more than conjecture built on a strained series of attenuated inferences.  The two statements Defendant claims show Officer Rivera's lack of knowledge are: (1) Officer Vinueza telling Officer Rivera, "hey Lex, the car is involved," *id.* at 9–10; Def. Ex. E at 12:56–13:02; and (2) Officer Rivera asking Officer Vinueza: "he got a jacket right?"  Def. Br. at 10; Def. Ex. E. at 27:17–19.  Defendant asks the Court to infer from these statements that Officer Rivera did not know the minivan was connected to Hutcherson's activity or that Hutcherson was wearing a jacket.  From this, Defendant contends that Officer Rivera was not diligently surveilling Hutcherson and therefore must be lying in his report that he observed Hutcherson engage in a drug transaction.  These conclusions do not rely upon reasonable inferences; they require multiple levels of speculation.  Therefore, the Court will not credit these statements as evidence contradicting Officer Rivera's police report.

Lastly, Defendant argues that Officer Vinueza was untruthful in his police report, which indicates a lack of credibility that should be imputed to Officer Rivera.  Specifically, Defendant notes that in response to a form question that asked whether "a search of a vehicle [was]

conducted," Officer Vinueza checked "no," even though the body camera footage shows that Officer Vinueza directed a search of the vehicle.  Def. Br. at 11–13.  This evidence is again too remote from the events leading to Hutcherson's arrest to have any meaningful influence on the Court's analysis.  The vehicle search has no bearing on the legality of Hutcherson's arrest, and any arguable connection is further undermined by the fact that Officer Rivera—the officer whose credibility Defendant challenges here—was neither involved in the search nor responsible for the alleged error on the report.

For these reasons, the Court concludes that Defendant has offered no evidence that materially contradicts or undermines Officer Rivera's report that he observed Hutcherson engage in a hand-to-hand drug transaction.  The Court may rely on statements made in police reports where the defendant provides no evidence that challenges the veracity of the report.  *United States v. Rucker*, 61 F. App'x 776, 777 (3d Cir. 2002) (holding that a police report was sufficient for probable cause where defendant's only contrary evidence was the absence of further investigation); *United States v. Sanders*, 404 F. App'x 613, 617 (3d Cir. 2010) (finding probable cause where Defendant "presented no evidence to counter the officers' observations"); *United States v. Fontanez*, No. 20-00689, 2021 WL 5105783, at *3 (D.N.J. Nov. 3, 2021) ("[Defendant] does not identify any evidence, via an affidavit or otherwise, that would contradict the timeline and details of the investigation provided by the police reports and body cam footage.").  Therefore, the Court considers Officer Rivera's stated observations in its probable cause analysis.

**b.  The Officers Had Probable Cause to Arrest Hutcherson**

The evidence, including the police reports, shows that the officers had probable cause to arrest Hutcherson at the moment the officers stopped him.[2]  Probable cause to arrest exists when the facts and circumstances suggest that "a reasonable person [would] believe that an offense has been . . . committed by the person to be arrested." *United States v. Tyree*, 292 F. App'x 207, 210 (3d Cir. 2008).  "Probable cause determinations are informed by analyzing the totality of the circumstances." *Schutzeus v. Pa. Bd. of Prob. & Parole*, No. 20-2031, 2022 WL 58541, at *3 (3d Cir. Jan. 6, 2022).

The record contains numerous indicia supporting probable cause.  First, Hutcherson was loitering in an area known for drug dealing, and specifically at a location where an anonymous caller had reported drug dealing only a few days prior.  *See United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984) ("The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely."); *Watkins v. Att'y Gen. of New Jersey*, No. 06-1391, 2010 WL 1462941, at *1 (D.N.J. Apr. 8, 2010) (considering that the defendant was located where there were "past complaints of drug dealing and prior arrests at the location").

Second, Officer Rivera observed Hutcherson "fumble with unknown items" in his minivan while interacting with unknown individuals.  Officer Rivera noted that this type of behavior was common among drug dealers.  *See United States v. Green*, No. 23-1022, 2024 WL 277706, at *3 (3d Cir. Jan. 25, 2024) ("[C]ourts regularly defer to what experienced narcotics officers aver about the common practices of drug dealers.").

---

[2] Defendant contends that "Mr. Hutcherson was seized . . . the moment Officer Rivera grabbed him and prevented him from leaving" at minute 2:04 of Officer Rivera's body camera footage, which is *after* Hutcherson began to flee.  Def. Br. at 15; Def. Ex. D at 2:04.  The Court agrees.

Third, Officer Rivera observed Hutcherson "sprint towards the intersection of Salem Street and South Orange Avenue" to "me[e]t up with a[n] unknown female," where she handed him cash and he "reached inside his pocket[,] retrieved a clear plastic bag[,] and from [the] same clear plastic bag he made a selection and handed the same lady an unknown item from [the] same bag." Def. Ex. A at 2; *see United States v. Smith*, 282 F. App'x 143, 148 (3d Cir. 2008) (considering an officer's observation of defendant engaging in a hand-to-hand transaction that officers suspected to be a drug transaction as part of probable cause analysis); *United States v. Velazquez*, No. 23-657, 2024 WL 49690, at *8 (D.N.J. Jan. 4, 2024) (finding an officer had "probable cause to arrest after observing the suspect engage in a suspected drug transaction"); *United States v. Willis*, No. 23-353, 2024 WL 2158253, at *5 (E.D. Pa. May 14, 2024) ("Observation of a single hand-to-hand drug transaction has been held sufficient to constitute . . . probable cause to arrest.").

Fourth, after identifying this meet-up as a drug transaction, Officer Rivera and Officer Vinueza approached Hutcherson. Hutcherson appeared to prepare to leave the scene on a bicycle, and then quickly dropped the bicycle, and attempted to flee the scene on foot. *Smith*, 282 F. App'x at 148 (finding officers had probable cause to arrest defendant after observing defendant engage in a hand-to-hand transaction and defendant fled from officers after they approached him); *United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007) ("It is well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest."); *United States v. Jiminez*, 767 F. App'x 318, 320 (3d Cir. 2019) ("We find that officers had probable cause to arrest Jiminez when he fled from Detective Henry on foot."). Considering the totality of these events, the officers had probable cause to arrest Hutcherson once he began to flee.

**c. Even If the Court Agreed with Defendant, the Officers Still Had Reasonable Suspicion**

The Court further notes that, even if Officer Rivera did not observe a hand-to-hand drug transaction on September 28, the officers still had probable cause to arrest Hutcherson. Specifically, at the moment Hutcherson began to flee, the officers had reasonable suspicion to make an investigatory stop, which ripened to probable cause when the officers discovered a firearm.

"The Fourth Amendment lets 'an officer . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Small*, 797 F. App'x 675, 677–78 (3d Cir. 2020) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* An officer needs only "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Henley*, 941 F.3d 646, 651 (3d Cir. 2019) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "The test is one of reasonableness given the totality of the circumstances, which can include [the defendant's] location, a history of crime in the area, [the defendant's] nervous behavior and evasiveness, and [the officer's] 'commonsense judgments and inferences about human behavior.'" *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Wardlow*, 528 U.S. at 124–25). "When reasonable suspicion surrounding a suspect ripens into probable cause during the course of an investigatory stop, arrest of that suspect is lawful." *United States v. Goode*, 309 F. App'x 651, 654 (3d Cir. 2009).

Even without a hand-to-hand drug transaction, Officer Rivera and Officer Vinueza had, at the very least, reasonable suspicion to make an investigatory stop at the moment Hutcherson was

11

seized.[3]  As discussed, the following factors contributed to the officers' reasonable suspicion:  (1) Hutcherson was loitering in a high-crime area known for narcotics activity; (2) an anonymous caller had reported drug dealing at Hutcherson's exact location only five days prior, and the caller's description of one of the drug dealers matched Hutcherson; (3) Hutcherson was fumbling with unknown items on the side of his minivan hidden from public view, while interacting with unknown individuals, mimicking common drug dealing behavior; and critically, (4) when the officers approached Hutcherson, he began to run away.

The accumulation of these facts supports a finding of reasonable suspicion.  "The Supreme Court has held . . . that flight upon noticing police, plus some other indicia of wrongdoing, can

---

[3] Defendant concedes that Hutcherson was seized at "the moment Officer Rivera grabbed him and prevented him from leaving" at minute 2:04 of Officer Rivera's body camera footage, which is *after* Hutcherson began to flee. Def. Br. at 15; Def. Ex. D at 2:04. Accordingly, an attempt to immobilize Hutcherson, who was actively trying to flee, would constitute a *Terry* stop. *United States v. Bonner*, 363 F.3d 213, 218 (3d Cir. 2004) (holding that the police's tackling of the defendant, who fled from a traffic stop and continued to flee despite repeated orders to stop, was a *Terry* stop); *United States v. Rogers*, No. 23-582, 2024 WL 2844545, at *4 (D.N.J. June 5, 2024) ("[P]olice officers making a *Terry* stop may tackle, handcuff, or even point their guns at a suspect without effectuating a full arrest.").

Defendant disagrees, arguing that when Officer Rivera grabbed Hutcherson to prevent him from fleeing, Officer Rivera conducted a full-blown arrest, not a *Terry* stop. But the evidence Defendant offers as support is unpersuasive. Defendant contends that the officers stated that they "were acting as a 'take down unit' and were planning to 'apprehend' Mr. Hutcherson," which indicates intent to arrest Hutcherson. Def. Br. at 16. This argument fails when put into context. Officer Rivera's police report stated that "Officer A. Vinueza along with [Officer Rivera] would pose as a take down unit in the surrounding area *in case any illegal activities arise*," not specifically to arrest Hutcherson. Def. Ex. A at 2 (emphasis added). Furthermore, although Officer Rivera stated he planned to "apprehend" Hutcherson, courts have found that the subjective intent of officers is not relevant to such analyses. *See Christian v. Orr*, No. 08-2397, 2011 WL 710209, at *16 (E.D. Pa. Mar. 1, 2011), *aff'd as amended*, 512 F. App'x 242 (3d Cir. 2013) ("Whether a suspect has been arrested does not turn on the terminology used by, or subjective intent of, officers, nor upon the subjective impressions of the suspect."); *United States v. Hart*, 334 F. Supp. 2d 5, 12 (D. Mass. 2003) ("As with most Fourth Amendment inquiries, the subjective intent of the police officers has no bearing on whether a stop was an arrest."); *Morston v. City of New York*, No. 14-5079, 2017 WL 4480147, at *3 (E.D.N.Y. Sept. 28, 2017) ("[T]he officer's belief and 'subjective intent do[ ] not calculate into the analysis' of whether a stop constitutes an investigatory detention, or an arrest."). Lastly, the officers did not read Hutcherson his *Miranda* rights until *after* they discovered his firearm, which indicates that the arrest occurred then. *Compare* Def. Ex. D at 2:39–2:56 (the moment the officers notice the firearm) *with id.* at 4:36 (Officer Vinueza attempting to read Hutcherson the *Miranda* warnings). The totality of the circumstances, combined with the cases cited above in this Circuit, indicate that when Officer Rivera grabbed Hutcherson to prevent him from fleeing, he conducted a *Terry* stop.

constitute reasonable suspicion." *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (citing *Wardlow*, 528 U.S. at 125–26). Courts have held that officers have reasonable suspicion in similar situations. *See, e.g.*, *Bonner*, 363 F.3d at 218 (holding that officers had reasonable suspicion where defendant fled from a traffic stop and continued fleeing despite orders to stop); *United States v. Jocktane*, No. 19-228, 2021 WL 6616728, at *5 (M.D. Pa. May 21, 2021), *report and recommendation adopted sub nom. United States v. Jocktane*, No. 19-00228, 2022 WL 175335 (M.D. Pa. Jan. 19, 2022) ("[O]fficers had reasonable suspicion . . . after they received a tip, [the defendant was] in a high crime area during the early morning hours, and saw suspects attempting to walk away as soon as they noticed the police."); *United States v. Gholson*, 181 F. App'x 299, 302 (3d Cir. 2006) ("Presence in a high crime area, plus unprovoked flight, or some other indicia of wrongdoing, however, can give rise to reasonable suspicion.").

After the officers stopped Hutcherson based on reasonable suspicion, their suspicion elevated to probable cause when Hutcherson reached for a firearm hidden in his body brace, and tossed it under a car as he continued to resist the stop. *See Gholson*, 181 F. App'x at 302 (finding that reasonable suspicion developed into probable cause when officers discovered a firearm on a fleeing suspect); *United States v. Elliott*, No. 21-75, 2021 WL 5711611, at *3 (D.N.J. Dec. 2, 2021) ("[L]aw enforcement did conduct a valid Terry investigatory stop based on reasonable suspicion and that upon discovery of a gun and ammunition, probable cause justified his warrantless arrest."); *United States v. Vessels*, No. 07-475, 2008 WL 818642, at *4 (E.D. Pa. Mar. 24, 2008) ("When the police did seize the defendant after he fled from them, they had not only reasonable suspicion but also probable cause to arrest him because [the officer] saw him drop a firearm. That, coupled with his flight and his resistance of the officers, was probable cause to arrest.").

Therefore, even if the Court agreed with Defendant's argument that Officer Rivera fabricated the hand-to-hand drug transaction—which it does not—the officers still would have developed probable cause to arrest Hutcherson.

## 2. Fruit of the Poisonous Tree

Defendant's final argument is that even if Officer Rivera and Officer Vinueza developed probable cause to arrest Hutcherson on September 28, the events of that day were tainted by an earlier "illegal" stop of Hutcherson by a different police officer, Officer Matthews. Def. Br. at 22. Defendant contends that Officer Matthews unlawfully stopped Hutcherson at some point before September 28 and subsequently told Officer Rivera and Officer Vinueza about the stop.[4]  *Id.* at 23–25.  Defendant argues that but for Officer Matthews' prior illegal stop at Halsted Street and South Orange Avenue, Officer Rivera and Officer Vinueza would not have surveilled Hutcherson's location on September 28, and ultimately would not have arrested him.  *Id.* at 24–26.  Defendant concludes that evidence obtained during the arrest must be excluded as "fruit of the poisonous tree."  *Id.* at 24.  For the reasons discussed below, the Court concludes that even if Defendant's account about a prior stop is true—which is a strained interpretation of the body camera footage—the evidence is not "fruit of the poisonous tree."

---

[4] To support his argument, Defendant relies on body camera footage recorded after his arrest, which captures Officer Matthews discussing a prior encounter with Hutcherson.  But nothing in Officer Matthews account suggests that this interaction was unlawful.  Officer Matthews stated that he "stopped Hutcherson because he was selling something," asked him, "yo, what are you doing you selling, like, lamps and stuff," and told him "nah, you cool" and "listen, I'm not gonna beast on you."  Body Camera Footage of Officer Anthony Matthews, Def. Ex. F at 48:38–48:55, 59:18–59:40.  The Supreme Court has made clear that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions."  *United States v. Kim*, 27 F.3d 947, 950 (3d Cir. 1994) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  The interaction, as described by Officer Matthews, appears to have been a brief inquiry by law enforcement of the sort the Supreme Court has held does not constitute a Fourth Amendment seizure. Nonetheless, the Court need not find that Hutcherson's encounter with Officer Matthews was lawful to support its holding.

14

Evidence that is the indirect product or "fruit" of unlawful police conduct must be suppressed under the exclusionary rule. *Utah v. Strieff*, 579 U.S. 232, 237 (2016). However, such derivative evidence shall not be excluded if "the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." *United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002). To determine whether this causal connection is sufficiently attenuated, the Court considers: "(1) the temporal proximity between the unlawful conduct and the recovery of the evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy' of the unlawfulness." *United States v. Wade*, 628 F. App'x 144, 148 (3d Cir. 2015) (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)).

First, Defendant's temporal proximity argument is uncompelling. Defendant contends that the alleged prior stop and Hutcherson's arrest "appear to have been close in time," because the body camera footage indicates that the encounter occurred the day before the arrest. Def. Br. at 24–25. Even if that is true, courts have denied suppression where as little as two hours elapsed between an allegedly unlawful "brief detention" and the collection of evidence. *See Wade*, 628 F. App'x at 148. "Exactly how much time constitutes 'temporal proximity' seems to be affected by intervening circumstances that occur during the time between the illegality and the discovery of evidence sought to be suppressed." *Id.* at 148 n.3. Given that the lapse here appears lengthy in light of existing case law, and the intervening circumstances discussed below do not contextualize the passage of time favorably to Defendant, the Court finds that this factor favors the Government.

Second, significant intervening circumstances broke any causal connection between Officer Matthews' alleged stop and Hutcherson's arrest. Defendant theorizes that Officer Rivera surveilled Hutcherson's location on September 28 only because of Officer Matthews' prior stop. Def. Br. at 25. But numerous intervening events transpired between Officer Matthews' alleged

15

prior stop and Hutcherson's arrest.  First, Officer Rivera and Officer Vinueza were directed at roll call to patrol the area for "drug trafficking taking place in the public view."  Def. Ex. A at 1.  They chose to "pay extra attention to the South Orange Avenue corridor specifically between Stuyvesant Avenue and Sanford Avenue" because "this area [was] known to both officers and it's notoriously known for the distributing of [various narcotics]."  *Id.* at 2.  The officers chose Halsted Street and South Orange Avenue specifically because of an incident call received a few days prior reporting drug dealing at that location.  *See id.* at 2; Def. Ex. C.  Then, while surveilling on September 28, Officer Rivera observed Hutcherson go in and out of his minivan and "fumble with unknown items" during brief encounters with individuals who approached him in an area known for drug dealing.  Def. Ex. A at 2.  Officer Rivera then witnessed Hutcherson exchange an item in a "clear plastic bag" for cash with a woman in the middle of the street.  *Id.*  In response, Officer Rivera and Officer Vinueza approached Hutcherson, who attempted to flee.  Def. Ex. A at 2; Def. Ex. E at 2:09.  Only then did the officers arrest Hutcherson.  Def. Ex. A at 2–3.  This series of intervening events occurred independently of any alleged conversation between Officer Matthews and Officers Rivera and Vinueza.  Therefore, the second factor strongly favors the Government.

Third, there is no indication that Officer Matthews' encounter with Hutcherson, even assuming *arguendo* it was unlawful, was "flagrant."  However, even if the stop was "flagrantly unlawful," the first two factors show that the connection between the alleged prior stop and the discovery of the firearm "is so attenuated as to dissipate the taint."  *Perez*, 280 F.3d 338.  Therefore, even if the third factor weighs in favor of Defendant, the Court still concludes that the evidence was not obtained as "fruit of the poisonous tree."

### B. Evidentiary Hearing

Defendant fails to meet the standard for an evidentiary hearing. Def. Br. at 1. Evidentiary hearings on motions to suppress "are not granted as a matter of course." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing Fed. R. Crim. P. 12(b)(3)(C)). "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Brown*, No. 22-1172, 2023 WL 3171558, at *3 (3d Cir. May 1, 2023) (citation omitted). "A defendant raises an issue of material fact 'by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally.'" *Hines*, 628 F.3d at 106 (citation omitted). "Moreover, the purpose of an evidentiary hearing is 'not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact.'" *United States v. Palmer*, No. 22-00282, 2024 WL 3052096, at *10 (D.N.J. June 18, 2024) (quoting *Hines*, 628 F.3d at 105).

Even if the Court were to conclude that Defendant presented a colorable claim for a violation of his Fourth Amendment rights, he fails to submit evidence that creates a non-conjectural dispute of material fact. Defendant first argues that there is a dispute of material fact as to whether Officer Rivera witnessed a hand-to-hand drug transaction involving Hutcherson. As established above, Defendant submits no relevant evidence that questions the validity of Officer Rivera's account, and so has not sufficiently presented a dispute of material fact. *See, e.g.*, *United States v. Lee*, No. 22-174, 2025 WL 441774, at *3 (D.N.J. Feb. 7, 2025) ("Without evidence to controvert the officers' observations, which provided an objective basis for the officers to make

17

the [stop], [Defendant] has failed to show the existence of a material dispute as to the [stop] that would necessitate a hearing.").

Defendant secondarily argues that the evidence obtained on September 28 was tainted by a prior unlawful stop. However, the Court concluded that even if this prior stop occurred, intervening circumstances broke the chain of causation. The Court assumes Defendant's version of the events as true in reaching its conclusion, and so "no further exploration of factual disputes will alter that analysis." *United States v. Escalante-Melgar*, No. 16-453, 2020 WL 968091, at *4 (D.N.J. Feb. 28, 2020). Therefore, because Defendant has failed to show that there are any contested issues of material fact, an evidentiary hearing is not required, and Defendant's motion is denied.

### C. Omnibus Motion for Pretrial Disclosures

Defendant moves[5] for an order requiring the government to disclose in advance of trial: (1) all material to which he is entitled under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) any evidence the government expects to introduce under Rule 404(b) of the Federal Rules of Evidence; (3) any expert materials under Rules 16(a)(1)(F) and (G) of the Federal Rules of Criminal Procedure; and (4) any Jencks Act material, including the notes of any law enforcement witnesses.

Defendant's request for disclosure of *Brady* materials is denied because the Government has represented that they are not in possession of any exculpatory materials. District courts have "general discretionary authority to order the pretrial disclosure of *Brady* material to ensure the effective administration of the criminal justice system." *United States v. Giampa*, 904 F. Supp. 235, 281 (D.N.J. 1995) (citations and internal quotation marks omitted). Here, the Government does not dispute its "obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny."

---

[5] Defendant filed two omnibus motions. ECF Nos. 31, 62. The second motion is an updated version of the first motion. The first motion (ECF No. 31) is thus denied as moot.

Gov't Br. at 8.  The Government represents that it is unaware of any potential Brady material, but that it will promptly disclose any exculpatory material that comes into its possession.  *Id.* Defendant does not direct the Court to contrary facts, and so Defendant's motion for disclosure of *Brady* material is denied.

Defendant's request for Rule 404(b) material, Jencks Act material, and expert material under Rules 16(a)(1)(F) and (G) is denied as premature.  "The Court generally determines the dates for disclosure of Rule 404(b) and Jencks Act materials after a final pre-trial conference between the parties."  *United States v. Edwards*, No. 20-572, 2024 WL 1620311, at *3 (D.N.J. Apr. 15, 2024).  Defendant is also entitled to adequate notice of any expert testimony.  *See United States v. Burton*, 404 F. App'x 617, 624 (3d Cir. 2010) (finding two weeks' notice before jury selection adequate).  A final pretrial conference has not been scheduled in this matter, and no trial date has been set.  Accordingly, Defendant's motion as to Rule 404(b), Jencks Act, and expert material is denied as premature.

## III.    <u>CONCLUSION</u>

For the aforementioned reasons, the Court hereby denies Defendant's motions.

Accordingly, **IT IS** on this 18th day of December, 2025;

**ORDERED** that Defendant's motion to suppress (ECF No. 30) is **DENIED**; and it is further

**ORDERED** that Defendant's first and second omnibus motions for pretrial disclosures (ECF Nos. 31, 62) are **DENIED** without prejudice, and that Defendant shall be permitted to file additional pretrial motions.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**
